**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DIANA AGUILAR,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 1:05-CV-0804** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **PENNSYLVANIA APPLE** | : | |
| **MARKETING PROGRAM, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM AND ORDER**

Before the Court are motions to dismiss filed by Defendants Pennsylvania Apple

Marketing Program, John Rice, Kay E. Hollabaugh, Larry Wright, Steven Linvill, H. Lee

Showalter, Jack Bream, Gordon Post,[1] Kenneth N. Dries, Brenda Briggs, Rice Fruit Company,

and R&L Orchard Company.  (Doc. Nos. 8, 9, and 10.)  The motions have been fully briefed and

are ripe for disposition.

**I.    Background[2]**

On March 11, 2003, Plaintiff Diana Aguilar was hired as Executive Director of the

Pennsylvania Apple Marketing Program ("PAMP").  As Executive Director, Aguilar controlled

PAMP's budget, devised and executed apple marketing events, and participated in cooperative

marketing arrangements with the Apple Marketing Boards of other states and with programs

---

[1]     Pursuant to a stipulation among the parties, Defendant Gordon Post was
dismissed as a Defendant in this action.  (Doc. No. 29.)

[2]    For purposes of evaluating the pending motions to dismiss, the Court accepts as true
all well-pled allegations contained in the Complaint. (Doc. No. 1.)

promoting the nationwide exportation of apples overseas.

PAMP is a corporate and political body, exercising powers granted to it by the Commonwealth of Pennsylvania.  PAMP's activities and ability to generate revenue are governed by Pennsylvania's  Agricultural Commodities Marketing Act, 3 Pa. Cons. Stat. § 4501 et seq. (2005).  PAMP generates revenue by taxing Pennsylvania apple producers pursuant to its statutory authority.  PAMP is required to conduct all promotions "without reference to any particular firm's or individual's brand or trade name."  3 Pa. Cons. Stat. § 4505 ("Marketing Order").

Shortly after Aguilar began working with PAMP, she found there was pressure exerted on her to give preferential treatment to the largest apple producer in the Commonwealth, Rice Fruit Company.  John Rice, a major stockholder and officer in both Rice Fruit Company and R&L Orchard Company served as a member of the Board of PAMP during Aguilar's employment.  In addition to Defendant Rice, Kenneth Dries, Jack Bream, Kay Hollabaugh, Larry Wright, H. Lee Showalter, and Gordon Post also served as members of PAMP's Board during Aguilar's employment.

In October of 2004, Rice forwarded Aguilar an e-mail from Costco.  Costco had plans to arrange a cookbook based on recipes from its vendors.  At the time of Costco's solicitation, a team of apple producers and suppliers consisting of Rice Fruit Company and New York Apple Sales ("NYAS") supplied apples to Costco.  On behalf of Rice Fruit Company, Rice committed to half of a $40,000 advertisement to be shared with NYAS.  Subsequently, Rice sent Aguilar an e-mail requesting PAMP to pay for half of his $20,000 share for the advertisement.

When PAMP's Board deliberated on whether to contribute PAMP funds to the Costco

advertisement, Aguilar voiced budgetary reasons for not giving Rice $10,000 to support the

advertisement as $10,000 was more than 10% of PAMP's total fall budget.  However, PAMP's

Board voted to support the advertisement and on January 25, 2005, PAMP sent Rice Fruit

Company a check for $10,000.  Although the Costco cookbook did not blatantly market any

specific brand, throughout the cookbook, John Rice's name is mentioned and the Eastern Apple

logo is used.[3]

     As Executive Director of PAMP, Aguilar was charged with planning two annual cause-

related promotions of Pennsylvania apples with Wal-Mart stores located in Pennsylvania.

PAMP had been performing such promotions prior to Aguilar's employment with PAMP.

During Aguilar's planning of PAMP's promotion with Wal-Mart early in 2005, Rice Fruit

Company was the sole Pennsylvania apple distributor under contract with Wal-Mart.  Sometime

during the planning of the promotion, Brenda Briggs, an account manager with Rice Fruit

Company made representations that the promotion was a joint promotion between Rice Fruit

Company and PAMP and insisted on maintaining direct involvement with the promotion.  Briggs

represented that the promotion was a joint PAMP/Rice Fruit Company promotion in her business

plan for Wal-Mart and had requested to speak about it at Wal-Mart corporate meetings.

Moreover, Briggs demanded to be the point person for the promotion and attempted to have all

PAMP-Wal-Mart communication directed by her, continued to determine the winners of the

promotions by using her vendor software, and made frequent demands on Aguilar to increase

funding for the promotion.

---

[3] Although the Eastern Apple logo is not used exclusively by Rice Fruit Company, it was
designed and paid for by Rice Fruit Company and is closely associated with its products.

Beginning in February of 2005, Aguilar felt that her power to promote Pennsylvania apples in compliance with the Marketing Order was being overridden by the actions of Rice and Briggs who were using PAMP as a marketing and funding tool to promote Rice Fruit Company. On March 1, 2005, in response to messages from Aguilar that she needed to resolve areas of conflict with Briggs and Rice Fruit Company, Rice sent an e-mail to Aguilar outlining how the Wal-Mart promotion was important to Rice Fruit Company.  In the e-mail, Rice also explained that Aguilar's job performance was fine with the exception of her problems with Rice Fruit Company's sales agent.

On March 2, 2005, Aguilar sent Rice an e-mail specifically outlining the actions of Rice and Briggs with regard to the Wal-Mart promotion which were violative of the Marketing Order. Also, on March 2, 2005, Aguilar sent an e-mail to Richard Hite, the buyer from Wal-Mart in charge of the promotion, seeking guidance on the proper roles for PAMP and private suppliers in the promotion.  Rice was copied on Aguilar's e-mail to Hite.

Later on March 2, 2005, Rice responded to Aguilar's e-mail message to Hite stating, "Perhaps we are dealing with an incipient nervous breakdown here.  Do you think Richard is going to respond to this?"  Hite also responded to Aguilar's e-mail of March 2nd, stating his desire to make sure that "nothing can be looked back upon this as being supplier supported in anyway."

On March 4, 2005, Aguilar received a phone call and e-mail from Wright stating that through a unanimous vote by PAMP's Board of Directors, she was being placed on administrative leave of absence with pay for two weeks commencing immediately.  On March 7, 2005, Aguilar received a phone call from PAMP's Acting Chair, Hollabaugh, requesting that she

resign from her position with PAMP under an agreement that she would receive an additional

two weeks of pay if she complied by Friday, March 18, 2005.  Aguilar declined this offer.

On March 17, 2005, Aguilar received a fax from Showalter indicating that she was to be

formally terminated by PAMP as of the close of business on March 18, 2005.  Aguilar never

received notification from PAMP or its Board of Directors as to the reasons for her

administrative leave and termination.

Subsequent to her termination, Aguilar filed a complaint against the Pennsylvania Apple

Marketing Program, John Rice, Kay E. Hollabaugh, Larry Wright, Steven Linvill, H. Lee

Showalter, Jack Bream, Gordon Post, Kenneth N. Dries, Brenda Briggs, Rice Fruit Company,

and R&L Orchard Company.  Aguilar alleges that Defendants violated her constitutional right to

free speech, her federally protected procedural and substantive due process rights, and

Pennsylvania's Whistleblower Law, 43 P.S. § 1421 et seq. (2005).

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is

properly granted when, taking all factual allegations and inferences as true, the moving party is

entitled to judgment as a matter of law.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103

(3d Cir. 1990).  When considering a motion to dismiss, the court accepts as true all factual

allegations contained in the complaint and views them in the light most favorable to the plaintiff.

U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  The plaintiff is required

to "set forth sufficient information to outline the elements of his claim or to permit inferences to

be drawn that those elements exist."  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)

(citations omitted).  A court should grant a motion to dismiss only if it appears the plaintiff can

prove no set of facts in support of his claim that would entitle him to relief.  Wisniewski v.

Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985) (citations omitted).  The burden is on

the moving party to show that no claim has been stated.  Johnsrud v. Carter, 620 F.2d 29, 33 (3d

Cir. 1980).

III.    **Discussion**

        A.      **PAMP Eleventh Amendment Immunity**

        Both PAMP, as a state agency, and PAMP's Board Members, acting in their official

capacities, argue that Plaintiff's claims against them are barred pursuant to immunity granted by

the Eleventh Amendment.  (Doc. No. 11 at 6.)  Plaintiff counters that PAMP is not immune from

suit because she seeks only injunctive and declaratory relief.  (Doc. No. 17 at 4-5.)[4]  Moreover,

Plaintiff argues that PAMP's directors are not immune from suit in their official capacities.

However, rather than providing an explanation for her assertion that official capacity claims are

permissible against PAMP directors, Plaintiff discusses the reasons why the Directors of PAMP

are permitted to be sued in their individual capacities.  (Id. at 5-7.)  For the reasons discussed

below, this Court will dismiss Plaintiff's official capacity claims alleged against PAMP and

PAMP's directors.

        Pennsylvania agencies are immune from suit in federal courts by virtue of the Eleventh

Amendment.  See Quern v. Jordan, 440 U.S. 332, 340-41 (1979); Alabama v. Pugh, 438 U.S.

781, 782 (1978).  Pennsylvania may waive its immunity in only two circumstances: (1) if the

---

        [4] In her Brief, Plaintiff mentions that she seeks declaratory relief and injunctive relief
contending that the "Pest Control District legislation" is unconstitutional.  (Doc. No. 17 at 4.)
Plaintiff's Complaint never once mentions this legislation and the legislation seems wholly
unrelated to her claims.  As such, this Court is left at a loss for exactly what injunctive and
declaratory relied Plaintiff is seeking for her claims.

Commonwealth consents to be sued or (2) if Congress authorized suits against states pursuant to its authority to enforce the Fourteenth Amendment.  College Sav. Bank v. Florida Prepaid Post-Secondary Educ. Expense Bd., 527 U.S. 666, 670 (1999).  A state does not waive its immunity by consenting to lawsuits in its own jurisdiction, by providing the ability for an agency to be sued, or by authorizing suits against the agency in any court of competent jurisdiction.  Id. at 675-76.

State officials sued in their official capacities are entitled to the same Eleventh Amendment immunity as a state agency.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Suits against state officials are "in all respects other than name, to be treated as a suit against the entity."  Id.  Absent state waiver or congressional abrogation, the only other exception which may apply to official capacity immunity is the exception announced by Ex Parte Young, 209 U.S. 123, 142 (1908).  Pursuant to Young, the Eleventh Amendment does not act as a bar to suit seeking to enjoin the commission of continuing violations of federal law by state officials.  Id. at 159-60.  The narrow exception carved out in Young does not focus on past conduct alleged to have been improper, but rather on present, ongoing conduct alleged to violate federal laws or constitutional provisions.  Papasan v. Allain, 478 U.S. 265, 277-78 (1986).

Neither Pennsylvania nor Congress has authorized Plaintiff's causes of action to be brought in federal court against the state, state agencies, or any state actors in their official capacities.  Congress has not abrogated the states' Eleventh Amendment  immunity in § 1983 actions.  See Halstead v. Motorcycle Safety Found., Inc., 71 F. Supp. 2d 464, 469 (E.D. Pa. 1999).  Moreover, Pennsylvania has not waived its immunity from suit in federal court guaranteed by the Eleventh Amendment.  See 42 Pa. Cons. Stat. § 8521 (2005). Additionally,

Plaintiff only complains of the past actions of PAMP directors and does not allege present,

ongoing conduct that is violative of her federal rights rendering the <u>Young</u> exception to

immunity inapplicable.

Although PAMP and PAMP directors in their official capacities, may be sued under

Pennsylvania's Whistleblower Law, 43 P.S. § 1421 <u>et</u> <u>seq.</u> (2005), the statute does not expressly

abrogate Eleventh Amendment immunity from suit in federal court.   <u>College Sav. Bank</u>, 527

U.S. at 670 (a state does not waive Eleventh Amendment immunity by consenting to be sued in

its own jurisdiction or in courts of competent jurisdiction).  Furthermore, the Supreme Court has

held that a district court may not exercise supplemental jurisdiction over nonconsenting state

defendants in federal court.  See <u>Raygor v. Regents</u>, 534 U.S. 533, 542 (2002) ("we hold that [28

U.S.C. § 1367(a)'s] grant of jurisdiction does not extend to claims against nonconsenting state

defendants"); <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 120 (1984).  For all

of the foregoing reasons, this Court will dismiss Plaintiff's claims against PAMP and PAMP

directors in their official capacities.

### B.      Section 1983 Conspiracy Claim Against Private Defendants

Defendants Rice, Briggs, Rice Fruit Company, and R&L Orchard Company argue that

Plaintiff's § 1983 conspiracy claim is deficient for lack of specificity and must therefore be

dismissed.[5]  In order to state a claim under § 1983, it must be shown that the individual

defendants, acting under color of law, caused the deprivation of plaintiff's federal rights.  <u>West</u>

<u>v. Atkins</u>, 487 U.S. 42, 48 (1988);  <u>Powell v. Ridge</u>, 189 F.3d 387, 400 (3d Cir. 1999).

---

[5]  Defendant Rice concedes that Plaintiff sufficiently pled a § 1983 retaliation claim
against him in his individual capacity as PAMP director.  (Doc. No. 11 at 8-10.)

Individual liability under § 1983 occurs when, acting under color of law, one had personal involvement in the alleged wrongdoing.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement exists not only when a defendant participated in the alleged wrongdoing but also when a defendant had personal knowledge of and acquiesced in the deprivation of federally guaranteed rights.  Id.

The color of law requirement may be met where the defendant has exercised power "possessed by virtue of state law and made possible only because the wrongdoer was clothed with the authority of state law."  Bonenberger v. Plymouth, 132 F.3d 20, 23 (3d Cir. 1997) (citations and internal quotations omitted).  This requirement may also be met where a private party conspires with a governmental official to deprive the plaintiff of constitutional rights. Melo v. Hafer, 912 F.2d 628, 638 (3d Cir. 1990 (citations omitted).  In order to fulfill the color of law requirement and sufficiently plead a § 1983 conspiracy claim:

> The plaintiffs must plead with particularity the "circumstances of the alleged wrong doing in order to place the defendants on notice of the precise misconduct with which they are charged.  Only allegations of conspiracy which are particularized, such as those addressing (1) the period of the conspiracy, (2) the object of the conspiracy, and (3) certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient.

Labalokie v. Capitol Area Intermediate Unit, 926 F. Supp. 503, 508 (M.D. Pa. 1996) (citations omitted).  When the sufficiency of civil rights allegations is contested, the court must look beyond "conclusory allegations . . . to the factual scenarios itself to examine whether the conduct alleged, viewed most favorably to the plaintiffs, is reasonably susceptible to falling within the conclusions alleged."  Id. (citing Freedman v. City of Allentown Pennsylvania, 853 F.2d 1111, 1115 (3d Cir. 1988)).  When a court concludes that the allegations are insufficiently particular,

9

generally it should permit amendment.  <u>Freedman</u>, 853 F.2d at 1114.  Moreover, when the lack

of specificity results from the defendant's control of relevant information, the court must permit

a reasonable amount of discovery under the circumstances.  <u>Id.</u>

In asserting that the private Defendants conspired with state actors to terminate Plaintiff

after she spoke out regarding what she considered to be inappropriate conduct by Defendants

Briggs, Rice Fruit Company, and R&L Orchard Company, Plaintiff makes only the following

limited allegation:  "all [of the private Defendants] worked with, conspired with, and/or

knowingly participated in the conduct of the aforementioned retaliatory conduct for their own

gain." (Compl. ¶ 63.)  This limited allegation offered to support Plaintiff's claim that the private

Defendants conspired with state actors with respect Plaintiff's retaliatory discharge is

insufficient, and contains no detail as to exactly what specific actions the private Defendants are

alleged to have taken in the alleged conspiracy.  Nevertheless, the Court finds Plaintiff is entitled

to leave to amend this claim to provide more specificity regarding the particular conduct on the

part of the private Defendants that form the predicate of the conspiracy claim.

### C.    Section 1983 Stand Alone Claim

In Count II of the Complaint, Plaintiff alleges that all Defendants violated 42 U.S.C. §

1983.  (Compl. at 16.)  All Defendants move to dismiss Count II on the ground that § 1983 is not

a source of substantive rights and that Plaintiff's substantive federal rights are asserted in Count

I, IV, V, and VI making Count II superfluous.  (Doc. No. 11 at 10; Doc. No. 13 at 8.)  The Court

agrees.

In the Complaint, Plaintiff alleges that § 1983  "broadly authorizes redress for any

violation of rights, privileges or immunities secured by the Constitution and the laws of the

United States by any individual acting under color of state law or by a state governmental

entity." (Compl. at ¶ 71). However, § 1983 itself "is not a source of substantive rights and does

not provide redress for common law torts - the plaintiff must allege a violation of a federal

right." Berg v. City of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) (internal citations omitted).

Here, Count II of the Complaint is redundant because Plaintiff alleges violations of federal rights

in Counts I, IV, V, and VI, all of which are brought pursuant to § 1983. As such, Count II will

be dismissed.

### D.    Due Process Claims

In Counts IV, V, and VI of the Complaint, Plaintiff alleges that all Defendants violated

PAMP policies and in so doing violated her procedural and substantive due process rights.

(Compl. at 19-21.) All Defendants move to dismiss Counts IV, V, and VI on the ground that

Plaintiff did not have a property interest in her employment with PAMP sufficient to support

either a procedural or substantive due process claim. (Doc. No. 11 at 10-14; Doc. No. 13 at 9-

10.)

When determining whether a procedural due process violation has occurred, courts

engage in a two-part analysis which first requires a determination of whether there is a property

interest subject to due process protection and, if so, determination of whether the procedures

available were consistent with due process. See Bd. of Regents v. Roth, 408 U.S. 564, 569-572

(1972); Robb v. City of Phila., 733 F.2d 286, 292 (3d Cir. 1984). The Supreme Court has

emphasized that an abstract or unilateral expectation is not enough to provide a property interest.

Roth, 408 U.S. at 577-78. Rather, a property interest in employment entitled to due process

protection exists where an employee has a legitimate entitlement to the job under state law,

11

policy, or custom.  Id.

Under Pennsylvania law, an employee generally may be terminated for any reason or for no reason.  Paul v. Lankenau Hosp., 524 Pa. 90, 94 (1990).  Viewing the Complaint in the light most favorable to the Plaintiff, her allegations do not allege that there are any state laws which carve her employment status out of general at-will employment.  Plaintiff argues that PAMP's by-laws and policies require fairness and consistency and therefore elevate her employment status to something other than at-will employment.  (Compl. at ¶ 92.)  However, a Commonwealth agency's policies and by-laws are not legislative action and cannot be considered a contract guaranteeing a property right in employment unless the legislature has so provided.  See Imdorf v. Pub. Sch. Employees Ret. Sys., 638 A.2d 502, 505 (Pa. Commw. Ct. 1994) (employee handbook and personnel manual did not create property rights).  Beyond statutory authority, two contractual means exist in Pennsylvania by which a property right to employment may be created.  See Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1399 (3d Cir. 1991).  The first is a contract which confers a protected status such as tenure.  Id. The second is a contract for employment which specifically states that employment could only be terminated for cause.  Id.  Upon review of the Complaint, it is clear that Plaintiff has failed to allege any facts sufficient to show that she had a property interest in her continued employment with PAMP.  Accordingly, this Court will dismiss Count IV and V.

Similarly, to prevail on a non-legislative substantive due process claim, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the the Fourteenth Amendment's due process protection applies."  Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 140 (3d Cir. 2000) (citation omitted).  Notably, public employment is not a

fundamental property interest which is protected by substantive due process.  Id. at 142-43.  For the reasons stated above, the Court finds that Aguilar did not have a property interest in her employment with PAMP and that even if she did have a property interest, no substantive due process rights exist that would afford her relief.  As such, this Court will dismiss Count VI of the Complaint.

### E.    Punitive Damages

Defendants Hollabaugh, Rice, Dries, Bream, Wright, Linvill, Showalter, and Post move to dismiss Plaintiff's request for punitive damages under Pennsylvania's Whistleblower Law, 43 P.S. § 1421 et seq. (2005).  (Doc. No. 8 at 2; Doc. No. 11 at 14.)  As Plaintiff concurs in Defendants' motion, this Court will dismiss Plaintiff's request for punitive damages against these Defendants.

**IV.**     <u>Order</u>

   **AND NOW**, this 19th day of January 2006, for the reasons discussed above, **IT IS**

**HEREBY ORDERED THAT** the pending motions to dismiss filed by all Defendants (Doc.

Nos. 8, 9, 10) are **GRANTED** in part and **DENIED** in part as follows:

   1.     All Claims against Defendant PAMP are **DISMISSED**.

   2.     Counts II, IV, V, and VI of the Complaint are **DISMISSED** as to all parties.

   3.     Plaintiff's claim for punitive damages contained in Count III is **DISMISSED**.

   4.     Plaintiff's claims contained in Counts I and III against Defendants Kenneth N.
          Dries, John Rice, Kay E. Hollabaugh, Larry Wright, Steven Linvill, H. Lee
          Showalter, and Jack Bream are **DISMISSED** insofar as these claims are brought
          against these Defendants in their official capacities as directors of PAMP.
          However, these claims are not dismissed as to these Defendants in their individual
          capacities.

   5.     Plaintiff's § 1983 claims contained in Count I against Defendants Brenda Briggs,
          Rice Fruit Company, and R&L Orchard Company are **DISMISSED**.  Plaintiff is
          granted leave to amend this Count against these Defendants to provide specific
          allegations and detail as to how these private Defendants conspired with state
          actors to violate Plaintiff's First Amendment rights or should otherwise be
          considered state actors.  Plaintiff shall file an amended complaint as to Count I
          within twenty (20) days from the date of this Order.  In the event Plaintiff fails to
          amend Count I in accordance with this Order, these private Defendants shall be
          dismissed from this action without further notice.


          ___S/ Yvette Kane_____
          Yvette Kane
          United States District Judge